Good morning, your honors. I'm Rich Walker from Scottsdale, Arizona. I have the honor this morning of appearing before this court and presenting our arguments on behalf of the Maricopa County, Arizona. With the court's permission, I'd like to reserve five minutes for comment. Okay, I'll help you. Keep an eye on the clock. Thank you. Your honors, there's perhaps nothing more fundamental to the concept of self-government than the right to determine the structure of the agreement and to allocate among its officers and institutions the various authorities and responsibilities of government. If the concept of federalism and the guarantee of republican government in Article IV, Section 4 of the United States Constitution mean anything at all, they mean that the federal government in Washington, the federal judiciary, is to a great deference to the choices made by the states in establishing what the structures of government of the state and local government will be. And so the responsibilities and authorities will be allocated among its institutions and officers. I think your argument is going is that the office of the sheriff is created by the Arizona Constitution and his duties are prescribed in state laws. But what do we do with the Arizona Court of Appeals decision that declares him to be a county official? And he's certainly subject to the budgetary control of the Board of Supervisors of Maricopa County, is he not? In regards to that question, let me address both of them, if I may. You're absolutely right, your honor, that the Arizona Constitution establishes the office of the sheriff and separately establishes the Board of Supervisors, which is the body that governs the governmental entity of a county. And those positions are separately electable and accountable to the electorate. All of the authority for law enforcement is conferred by the Constitution and the legislations of Arizona upon the county sheriffs. None of that authority is devolved upon the county as an entity and its Board of Supervisors. I want to take a moment here to, let me make it to the heart of it here. I don't think there's any argument by the United States that the sheriff is not the policymaker for law enforcement purposes in the county of Maricopa. But I do think it's significant that the Board of Supervisors funds the activities of the sheriff, including the operation of the jails and so on. And buys him police cars and tells him how many deputies they're going to fund and all that stuff. And why doesn't that render the county liable financially for civil rights violations that may have been committed by the sheriff and his deputies? I have three points in response to that. Your opening comment touches upon something that I think is a real problem in the historical precedence, and yet in this case. And that is there is a real distinction between the county as a geographical entity and the entity, the legal entity that is created by the Constitution and the statutes. And engaged with certain powers and responsibilities to your budgetary point of order. As a matter of fact, the Board of Supervisors' discretion with respect to the sheriff's budget is substantially limited by ARS 11-441A. Which requires the county to provide funding for the necessary and actual costs present to the sheriff's office. And maybe the case that best illustrates the extremely limited authority that the Board of Supervisors has with respect to law enforcement matters. Is Hounsell v. White, in which the Court of Appeals held that the Board of Supervisors does seem to have the power to impose discipline upon deputy sheriffs who engage in misconduct. And if you don't have the authority to impose discipline, you don't really have much control at all. But as I understand the theory of the United States, county funds were being used to pay for immigration raids and I'll call them emphasis patrols for want of a better term. That initiated traffic stops on the basis of alienation and so on. Basically, the issues that were litigated before, I think, a different federal judge. And the jury returned its verdict in favor of the United States. So the question is who pays at this point? If it's the county that is funding these activities and the sheriff is the highest ranking law enforcement official in the county setting the policy. I guess I'm asking what's unfair about asking the taxpayers of Maricopa County to make them the judgements. Well, Your Honor, first of all, this case was brought under 42 U.S.C. Section 14141 and Title VI, neither of which provide for monetary relief for damages. So the analysis that you're talking about, I think, if you look at the case law under 1983 in Medellin, the concept is there is no respondeo superior liability under 1983. But there is this policymaker concept whereby if somebody is the chief policymaker for the county as opposed to in the county, then the county can be held liable to get damages. Do you concede that the sheriff is the chief policymaker for policies and procedures governing his deputy sheriffs and the discharge of their law enforcement duties on behalf of the county? I do not, Your Honor. As a matter of fact, I vigorously dispute that point. The sheriff, I thought we had in the Arizona Court of Appeals decisions to resolve that. Well, the problem with those decisions, I believe, Your Honor, you're referring to the Flanders decision itself, and there's a district court decision called Guildory. If you look closely at both of those decisions, there's no indication of the kind of rigorous analysis that the Supreme Court prescribed in McMillan v. Monroe County, Georgia, to determine when the sheriff, in the discharge of his law enforcement duties, is acting, what agency is he acting on behalf of. The criminal laws that the sheriff of Maricopa County enforces are state laws. He also enforces county ordinance violations, does he not? He does, but that's not an issue here, and that's a hugely minute part of his responsibility. So if you walk your dog off the lease in the county parks, you might have to answer to a deputy sheriff for it, right? That's correct. But even those cases, I'm informed, Your Honor, when they're prosecuted, are prosecuted on behalf of the state, not the county. So, and one of the, well, let me see, let me ask the next one. I'm sure it's a question that's coming in from a different angle. If we're all in agreement that the deputies are out there to preserve the peace and maintain law and order in the county, why not be operating for the benefit of the county in that instance? And here the allegations are that they engage in unconstitutional police practices in the discharge of those duties. I think, Your Honor, that the sheriff and his deputies in enforcing the law certainly provide a benefit for the citizens and residents of the county. The county is a geographical entity, but there is nothing in the structure of the Arizona government or county-level government under Arizona's constitutional statutes that would indicate that those responsibilities are being discharged on behalf of the county as an entity. Well, I guess that's the leap I'm having a hard time making, because you would concede, would you not, if the deputy sheriff stops an armed robbery in progress that is law enforcement action taken to protect the peace of Maricopa County? And would you not, you'd agree, right? That's why we have them out there, to protect and to serve, I agree. Okay. So why should the county, if it benefits in that instance by having the deputies on the road, also stand responsible for their actions when they do unconstitutional things under color of their office? I think the, let me try to come at it from this direction. Again, we're not talking about financial responsibility here, because under ARS 11-441, and the Menil line of cases, if you were in action under 1983 for damages, the county is on the hook, no question about that. But the question is, in an action for declaratory injunctive relief, how can the county be held liable and compelled to do something when it has no effective control over the matter in which law enforcement, which does this for the supervisors, fund the sheriff's training? The budgetary process at the county level in Arizona, as I understand it, Your Honor, works as follows. The sheriff comes in, he presents a budget, and there is discussion with the board of supervisors about how much, given the depth of the issues the county faces today. But there's a pretty clear line that is drawn in those discussions between the board of supervisors trying to say, well, we think you ought to do more DUI roadblocks that invades the province of the sheriff. So does that budget include however many millions it is, payment to the State Law Enforcement Training Academy, which I understand is run in Phoenix, to pay for the training of deputy sheriffs so that they can become Commissioner of Law Enforcement Officers? Does the county pay for that? The sheriff's budget does, on a regular basis, include a request for funds for training of officers. In fact, I understand that's probably there. I'm hoping that that training includes constitutional principles and trains new deputy sheriffs in what they can and cannot do when they're out there on the road. It does, and that training is prescribed and, to a large extent, if not entirely, defined by a state institution called AC Post, as I forget what the acronym stands for. There's a state official who is appointed the director of it. I get all that. But it's still local money to pay for, at least in part, the training of police officers and sheriff's deputies who are going to go back to work for the various jurisdictions that hired them for many years in the district. So why shouldn't the county be answerable to the judgment or, in this case, the injunction so that the training includes, for example, training deputies in unconstitutional behavior so they don't do it while they're out on the road? Well, Your Honor, I think we've got two levels of issues here. The first, which was really pressed aside and given very little of any attention by the district court, is actually an Article 3 standing issue, and that is one of the central elements of Article 3 standing is redressability. So the question is what injunction could be issued to the county? And we're not talking about the sheriff. There's certainly an injunction relief as regards to sheriff's redress. But what injunctions could be issued to the county that would be within the parameters of its lawful authority? Your Honor, I think I just suggested the answer to you in my questioning, didn't I? That the injunction, as I understand it, forbids discriminatory law enforcement practices that are based on Hispanic race. But we don't want to be stopping people for the crime of driving while Hispanic. And the county can easily use its money to pay in the academy and maybe even in service training classes for instruction as to the deputy sheriff to make sure they understand that they can't do that as a result of the Constitution and the federal injunction. Well, Your Honor, that's essentially what loyal liability is all about, is it not? Liability in the county for promulgating unconstitutional practices. I think that's probably 60,000 unoutlined pieces. However, I'd like the Court's attention to the Supreme Court's language in the McMillan case in which it said that the fact that in Alabama it's a county commission, not board of supervisors. The fact that the county commission provides the funding, the budget, for the operations department is, in other words, the Court were an attenuated and passed basis for controlling the actions of the sheriff. Now, we've already, most of my time, and I can take you some of the other time, so I better sit down. You want to sit down? Okay, great. Let's hear from you, everybody. May it please the Court, Elizabeth Heger for the United States. Your Honor, the District Court was entirely correct to hold that under Arizona law, sheriffs are final policy makers for their counties in the area of law enforcement. As you know, this Court reached the same conclusion in the Melendrez litigation, stating that Arizona state law makes clear that Sheriff Rapaio's law enforcement acts constitute Maricopa County policy since he has final policy making authority. This county relies almost completely here on cases dealing with responding as superior. The county also cited all these cases in Melendrez litigation, and this Court stated that those cases were inadequate because responding as superior was not an issue here in Ordinal in those three. Now, the Court in the Melendrez litigation, when making the holding, this Court stated, this Court relied on the Flanders case. That case faithfully applied the Supreme Court's decision in MacMillan, and it did that by analyzing state law to determine whether the sheriff had final policy making authority. The Flanders Court recognized that under the Arizona Constitution, a sheriff is a county officer, and the Arizona state law requires him to take charge of and keep the county jail. For those reasons, the Court held the sheriff was the chief policy maker for the county with respect to the county jail. Now, it's true that Flanders dealt with jails and not more general law enforcement, but this county has presented no argument with respect to why the sheriff is a policy maker for jails and not law enforcement. Both of these duties are found in revised statute 11-441. I'm not sure, based on what I heard Mr. Walker say, that he's disagreeing, that he is the policy maker for law enforcement. Maybe I misunderstood his answer, but I don't think this being a misunderstanding. It's not, but this Court, a different panel of this Court has held that he is the final policy maker for the county in the area of law enforcement. I mean, if it's not him, it can't support supervisors, because under Arizona law, they are not charged with responsibility for law enforcement. That's the sheriff's job. That is the sheriff's job, Your Honor. But the county, as Your Honor has made clear, can exercise many supervisory functions over the sheriff's office. And whether the sheriff is a policy maker for the county depends heavily on what kind of supervision the county can provide to the sheriff's office. And we have laid out in our briefing, briefing below in the briefing in this case, numerous things that the county can do with respect to the sheriff's office. And I'd like to point out, Your Honor, that the cases in the Ninth Circuit has looked at this issue several times in Strait and Cortez, Goldstein, and Brewster. And the number one thing that this Court has found persuasive in determining whether the sheriff was a policy maker for the county is whether the county has to pay for the civil rights violations that the sheriff has found liable for. And in this case, that's not even a question here. Again, in Goldstein and Brewster, this Court called that crucial. It is the number one thing that the Ninth Circuit cases have looked at in making that determination, Your Honor. I'd also like to point out that every single federal district court who has analyzed this issue has found that the sheriff is the policy maker for the county in the area of law enforcement. That includes the Guillory case, the Ponte Arizona case, Lovejoy case, and of course, Melendrez as well. And these holdings are not surprising. They represent a correct application of Macmillan. Counsel, if I could interject a question, please. On the Article 3 issue that was raised by your friend on the other side, the redressability under Supreme Court and Ninth Circuit prestige, is it necessary that the county be able to redress all of the problem, or is it enough if they can redress part of it? Thank you, Judge Gould. For one thing, standing is directly not an issue in this case, but I'm happy to answer your question. It is not necessary, absolutely, that the county can redress every single aspect. Isn't standing always an issue in terms of our jurisdiction? Certainly, Your Honor. Standing always has to be satisfied. That's correct. But as the district court held, it is not the case that the county has to be able to redress every aspect. What matters is whether the county can affect the injunction here, whether the county has some sway. And as the district court found that it certainly did, the district court pointed heavily to the budgetary authority that the county has in this matter. So the district court did find standing here, and several other courts have held so as well. Thank you. Including middle interest. I can also discuss several more factors that this court has found persuasive on this issue. The fact that the state law in the California Constitution categorized the district attorney as an officer of the county straight emphasized that factor as well in court tests, that it was particularly salient to California's constitutional designation of sheriff as county officers. Here we have the same thing. The sheriff is a county officer under both Arizona Constitution and under state law. The court has distinguished McMillan multiple times in the case that's considered, where unlike in McMillan, there was no constitutional effort to place sheriffs under state control. Both Goldstein and Brewster emphasize that fact. This court made the point in Brewster that the California law provided the Board of Supervisors a statutory duty to supervise the conduct of all county officers. And as the court held it, this meant that the Board had a substantial interest in the performance of the sheriff's department, including the conduct of his officers when investigating a crime. And there's a quote from Brewster that's very salient here. Brewster court said, merely because a county official exercises certain functions independently of other political entities, the county does not mean that he doesn't act for the county. So I think the same applies here. It's kind of a separation of powers argument, but just because the sheriff can act independently from the county in certain respects does not mean he is not acting for the county. The board can remove the sheriff in one instance. The board has the authority to seek reports from the sheriff, just as any county officer, on whatever issue under the sheriff's supervision. And we'll make sure he's spending the money on what they budgeted. Exactly, Your Honor. The board can ask for reports from the sheriff on his compliance with the injunction in this case. And if the sheriff refuses to provide such reports, the county does have the power to remove him, just as with any other county officer. So they don't go through some sort of a recall section? No, Your Honor. Not according to the Arizona State law. Just very quick, Your Honor. I'd like to speak very quickly about the Gretsch case that the county emphasizes in its briefing. We know that the Eleventh Circuit's interpretation of McMillan and Gretsch does not control this case. Goldstein, Strafer, and Cortez do. But even so, there are key differences between this case and the situation in Gretsch. The biggest difference is that the Judge Supreme Court had told the counties they're not liable for and not required to pay judgments against sheriffs and civil rights actions. Here, the county does pay those expenses. That's not even an issue. And, again, this Court has held that that is a crucial factor that weighs heavily toward finding that the officer is a policymaker for the county. Now, if the Court would like to hear about issue proposed, I know that we didn't quite get to that with the other side, but I can discuss that as well. I don't need anything on that unless my colleague does. I think you can rest on your briefing on that issue. Okay. Thank you, Your Honor. All right. Thank you very much. Ms. Walker. Thank you, Your Honor. One of the things that I was trying to get to when I got myself up for a weekend is our current discussion and the Council for the United States discussion has slurred on the cases to see it in under 42 years, since 1983. This is not a 1983 case. I'm interested in what's your response to her last comment with regard to what we'll call autumn reports. If the county board clearly has the right to make sure that the money is being spent in the manner in which they budgeted it, do they not? Well, to find a point on it, Your Honor, the county does, as Zigger indicated, have the right to demand that county officers, including the sheriff, provide reports. The county's power with respect to those reports, however, is limited to removal if there is a refusal to provide the reports. Couldn't the board call for a report as to how funds are being expended with regard to subjects covered by the injunction? Yes, and as a matter of fact, Your Honor, I believe on a fairly regular basis, as a matter of sound fiscal management, the sheriff and other county officers do provide reports to the board of supervisors about how their monies have been spent where they are in terms of the budget in that sort of country. And if the sheriff refused to do that, the board could remove him from office? That's correct, Your Honor. But I think it's important to emphasize that the removal power is limited to the situation where a county officer refuses to provide the report that has been requested. The other point I would make is counsel from the United States emphasizes that every district court that has looked at it has come to the conclusion that the sheriff is the policymaker, again, Section 1983, for the county as the entity. But when you look at those cases, what is conspicuous by its absence is the kind of rigorous analysis that the McMillan court prescribed. And we have repeatedly asked for that searching analysis to be done. We believe when it is done, it will compel a conclusion that under the Constitution and Statutes of Arizona the sheriff, when carrying out such poorly mandated law enforcement duties, is not acting on behalf of the county as an entity, although, as Your Honor pointed out, obviously, in doing so, he produces benefit to the extent that the law is enforced and peace is kept. Do you think he's acting on behalf of the state in that capacity? I'm sorry, Your Honor, do you think he's acting on behalf of the state in that capacity? I think he's acting either on behalf of the state or on behalf of his constitutional office. And I'm emphasizing constitutional office as distinguished from the bureaucratic, the Maricopa County Sheriff's Office, which has been found to be a non-governmental entity. So what other office? I don't even know what you're talking about. It's fine to say constitutional office, but it's separate from the Sheriff's Office itself. No, no, well, the Constitution establishes the office of the sheriff. And so what I'm saying is I think there's an argument to be made that when the sheriff is carrying out such poorly mandated law enforcement duties, he's acting on behalf of that constitutional office or the state. But it seems to me very clear that he's not acting on behalf of the entity that counts. Okay. What is your movement? One is to do this rigorously. I think it's good enough analysis. So what's the most compelling piece of evidence that you've seen out of analysis for years? What do you think? Well, I think, as I've just shown a couple of times, we're not operating under Section 1983. And the theory on which the district court granted summary judgment against the county is an awful theory. And it imports Section 1983 rationale. And both the language of that statute and its origins enacted almost 100 years prior to Section 14141 and Type 6 are quite different. And I don't think we'll hear that interpretation. Do you want us to apply that analysis from the mental health and safety council? Because I have to say, under that rubric, what's the best thing you've got that I need to look at and focus my attention on? That's all I was asking. Because I've taken through all of those, and I think they all make sense to me. So I'm just like, what is your best thing that I've perhaps missed? So the appellants is the most important factor in determining whether a sheriff is acting on behalf of the county, his control. To what extent does the county have control? The United States mentions that under Arizona law, the sheriff is characterized as a county officer. Appellants doesn't really count for very much. The same factor exists there. We've discussed the fact that the funds for the operation of sheriff come through the Board of Supervisors. Same thing with Anne McMillan. The case law, if you want to look at a uniform case law, both in the district court and in the city courts, the case law on the responsibility of the county for tortious conduct is very uniform, because there is no control over the activities of the sheriff and his entities in the execution of their law enforcement duties. There is no tort liability for the county. So the state office or agency that exercises more direct control over the sheriff than the county Board of Supervisors that you're reviewing? Actually, the way our government is set up, Your Honor, the body that exercises control and gets it very effectively last November is the district.  Thank you very much, counsel. The case is argued and submitted. Counsel, please return to your seat.
judges: Gould, Tallman, Watford